Please call the last case for argument. Case number 23-2589 from Eastern Missouri, United States v. Ryan Fleming, Jr. Mr. Selig? Good morning. May it please the Court, my name is Eric Selig, and I represent the appellant, Ryan Fleming, in his appeal from a conviction in a jury trial. There are both evidentiary issues and sentencing issues that we're appealing. The district court erred in denying a new trial in the face of surveillance video indicating a miscarriage of justice occurred due to the verdict entered was against the weight of the evidence. In the United States v. Williams, the district court granted a new trial under the Federal Rules of Criminal Procedure 33 when the evidence weighed – when the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. And this is different from a motion for acquittal, a judgment of acquittal, because you don't need to look at the evidence in the light most favorable to the State. And that's in the United States v. Espinoza. So if I understand your argument, and I've looked at that video several times, I'm not sure it's quite as clear as you say it is. It's a pretty spectacular video. Yes. The jury found that he possessed the gun and, in essence, threw it out after the argument – or, I mean, after the accident. I'm not sure if the jury thought that he threw the gun out the door. Or at least he possessed it and then ran away. Your position is it's uncontroverted from the video that he didn't possess it, that it just fell out. Is that your – is that your argument? That's correct. Right. I just don't – I looked – like I say, it's a pretty spectacular incident and, you know – but I don't see how you can tell that from the video. I'm just not – I'm not sure I'm there. Okay. Well, and I guess I – All you can see is that the gun comes out. Right. You know the gun comes out. Right. You see the accident. You see the crashing against the concrete median. You see the car bounce. You see pieces of the car fall off. Yeah. I mean, this car is going everywhere. Right. Right. The car changes direction. And then when it lands, you actually see there's a moment. And then the door opens. And immediately when the door opens, the AR-15 falls to the ground. The door opens, the car – and the gun comes out. You don't – I don't know how you can say from that that it's uncontroverted, that he wasn't the one who kicked it out or threw it out or did something that it might – it almost defies logic that an AR-15 would be wedged up against a door in such a way that when you open the door, it would just fall out. Your Honor, I think with the inertia and all the issues that happened with that crash, there's a lot of things that happened in the interior of that vehicle that might not be normal. But I think most importantly is that the government's only eyewitness, Police Officer Grolsch, who was in the vehicle that was following Mr. Fleming's Hyundai, was on the passenger side of the vehicle, maybe two car lengths away. The vehicle has dark tinted windows. And Police Officer Grolsch admits that he cannot see what's happening on the driver's side of the vehicle. Officer Grolsch testified that Mr. Fleming got out of the vehicle with the gun in his hands, tripped over the curb, and dropped the vehicle. And there's – that is impossible for him to have seen. And Officer Grolsch actually in the trial transcript, the second volume, page 53, he testifies that he agrees that his testimony and his memory is wrong and that the Missouri Athletic Club surveillance video shows that his testimony is wrong. And because of that, the judge should have granted a new trial. That's our argument under Rule 33. I guess it's Scott that talks about – the Supreme Court talked about the video that was overwhelmingly contrary to testimony or whatever. What's the standard of review? Do we look at the video and then we can trump the verdict because we see the video different than – We say it's conclusive and the district court says it's inconclusive and the jury credits the officer's testimony. Your Honor, that's exactly what Rule 33 is there for, is for when the jury gets the verdict wrong because the evidence doesn't support what the – I was asking a standard of review question. Oh, well, because it is a fact issue, I would agree that the standard of review would be maybe plain error. Sorry, sufficiency of the evidence. Anyway, Your Honor. The government's witness, eyewitness, testifies positively. The verdict is positive. And defense counsel says, wait a minute. A video establishes under Scott that it overwhelms the credible testimony of the government's witness. And the district court denies a new trial on that ground. And you come up here and basically say we can review – our de novo review of the video can trump that decision. And I don't think that's right, but I don't know. I didn't research it. Your Honor, I believe in the United States v. Crenshaw case, which is, I believe, mentioned in the Stark, United States v. Stark case, both of those indicate that when there is testimony to something that is impossible for the witness to have seen, then a rule – That's clearly not true here. And, Your Honor, I would say that that is actually the case that we have here, that what Police Officer Grolsch testified to was impossible for him to have seen. And contrary to the unique situation that we have, that we actually have an independent surveillance video that completely contradicts what the sole eyewitness that the government presented had. Well, it may contradict the eyewitness testimony.  But that doesn't mean necessarily that it contradicts the verdict. Well – Because what you're saying is the officer said he got out with the gun and threw it down. And dropped it. Right. And tripped and dropped it. And the – it's hard to see that from the video. I would concede that. You can't – it's hard to see him doing what the officer said he did. But it's also clear from the video that a gun came out. Correct. There's another – And so the jury could discount the officer's testimony but still found he possessed a gun. Based on the video. Well, there was a passenger in the vehicle. And there certainly could have been possession of the weapon by the passenger. And the jury rejected that. And I think the jury made a mistake. But it definitely came out from his side of the vehicle. That's correct. And it was – it had to be almost next to the door, given how quickly it came out. So what you're saying is that an AR-15 that's next to the door or immediately accessible to the driver, there's a fact question that precludes a finding of guilt that he possessed it because in this horrendous collision that occurred, this AR-15 may have been flying around the car somehow or the other and landed in his lap. Your Honor, I'm not even sure if it landed in his lap but landed perhaps next to the door so when the door is open it falls to the ground. Because that's what clearly – But the jury's free to ignore – I mean to disregard that theory, aren't they? Yes. And when the jury disregards evidence that outweighs what the verdict should be, that's why there should be a granting of a new trial under Rule 33. That's the purpose of that law. It's a safeguard against the jury making decisions against the weight of the evidence. And that's what Congress decided by enacting that rule of criminal procedure. Now, I'd like to go to my second point, which is that the district court miscalculated the guideline range by adding a two-level enhancement under 3C1.2 of the Federal Rules of Criminal – sorry, under the Federal Guidelines based on the same conduct underlying the four-level enhancement imposed under 2K2.1b6b. The United States guideline comment under 3C1.2 actually states that the Court is not to apply 3C1.2, that enhancement, where there's been another enhancement based on the same conduct. And, Your Honors, there's no doubt that the district court judge used the same conduct, which was this high-speed chase and accident and the danger of death or serious physical injury for both of the enhancements, which is not allowed. Your Honors, the – I thought there were two different fleeing, in the car and then after the gun dropped. Your Honor, the fleeing after the gun dropped would not be a felony. And the – But the gun was part of it. He meant to flee with the gun, but he dropped it and didn't have time to pick it up. Well, I think that we need to look at two things. One is that I think that that was facts that were, of course, created by the government, not supported by the evidence because of point number one. But point number two is if he did get out of the vehicle and had the gun in his hands, which we know did not occur, and tripped and dropped the weapon, there was no intent – the government had argued that there was some kind of intention of intimidating the police officer. Isn't there a risk of harm? Isn't that the standard under the State statute? Under the State statute? Isn't there a risk of harm to make it a felony? Maybe my question is not direct enough, given where you were at. I think I understand what you're saying, that the risk would be that he comes out of the car with the gun in his hand and drops it. At the same time with a gun, yeah. Well, and again, I would say that the evidence wasn't that he came out of the vehicle with the gun in his hand. But there would be no intention to intimidate, which is what the government had argued. So – and I guess I'm getting – maybe I'm just getting confused. So the district judge, as I understand it, for the 3C 1.2 enhancement relied upon the fleeing from the car, not the car chase itself, right? I'm not clear about that. But your argument is – do I understand your argument to be that for the 3C enhancement to apply, the subsequent chase has to be a felony? No. For the 2K2.1b6b, that the felony fleeing would be the felony in connection to possession of the weapon. Well, the government's brief says that the 2K2.1b6b applied to fleeing the car on foot, while 3C 1.2 applied to the high-speed chase. And I think that that is – We're reversing that. Well, and I think that that's – I'm sorry to interrupt, Judge, but I think that that's part of the confusion, is I don't think it was ever clear by the court's ruling, and I think that the government is arguing that, but that's not what the judge has ruled. Was the objection made during a sentencing hearing? It was, yes, Your Honor. And the court was asked to clarify this and didn't? The judge made a rule – the court made a ruling afterwards that that wasn't clear. What do you mean by afterwards? Well, I'm sorry, after the objection. After the objection, a what? After the objection was made. So I – I didn't read the sentencing transcript, but I can't imagine there wasn't an opportunity to ask the district court to clarify this. If the court didn't make it clear what went with what, all you've got to do is ask. And when counsel doesn't ask and we don't get an opportunity to hear the district court's explanation – And, Your Honor – As far as I'm concerned, it shouldn't even be plain error. It ought to be waiver. Well, Your Honor, and I think it was clear that the judge was using both pieces of the high-speed chase as facts for both enhancements. What makes it clear? Give me the transcript page. Your Honor, I don't have that in my memory. I'm always asked to. Just do it over, judges. You know, district court doesn't matter. I'd like to reserve my 20 seconds. Thank you, judges. Mr. Wiseman. Your Honor. May it please the Court. My name is Derek Wiseman. I'm here today on behalf of the United States of America. This court should affirm the appellant's conviction and his sentence in this case for the very same reason. Because the evidence established that the appellant possessed a loaded, ready-to-fire assault rifle during his flight from law enforcement. The district court's correct finding of this fact resolves – Did you ever even argue that just possession in the car was sufficient? No, Your Honor. It's possession after he got out of the car. I understand what the issue is on appeal. I'm just surprised. It seems to me it would have been enough that he was in the car with a loaded AR-15. Absolutely. And that argument at trial was absolutely made. The fact that he was riding around in a car – Was it objected? Absolutely not. You know, we don't know why the jury found what they found. But the jury could have found that he possessed – Why didn't you talk about that in the brief? It is mentioned in the facts in the brief, Your Honor, and in describing the trial, exactly what happened here. The AR-15, as Judge Malloy pointed out a moment ago, was in the driver's seat of the car. And it defies logic, as Judge Malloy pointed out, that the gun was anywhere else in the car besides right there with the appellant. So, of course, he possessed that gun.  And as to the first point, that's why the district court properly denied the appellant's motion for a new trial. Because the trial evidence established that he possessed that assault rifle. Now, the appellant's argument for a new trial, once again here today, mischaracterizes a single piece of evidence at trial. We heard, again here today, their claim wholly relies on an argument that the government's exhibit, an exhibit that was admitted and offered by the United States, Government's Exhibit 11H, that that completely contradicts the arresting officer's sworn testimony. But here's the problem. That argument was rejected by the jury. It was repeatedly rejected by the district court below. And it should be rejected by this court here today because it's simply not true. The district court correctly held that when you look at that video, and as Your Honors have seen the video, it does not at all contradict the officer's testimony. As Your Honors can see from the video, which we submitted to this court, both the vantage point of that camera with the door in between what's happening and the actual camera, and also the officer's spotlight that's shining directly at the camera, both of those things make it impossible to tell what the officer saw that night. The evidence is clear on that point. So what the video actually does show, for what it does show, is actually important corroboration of the officer's testimony, specifically as it relates to the timing of the key events as he saw them unfold. So what the district court did in this case, Your Honors, is it thoroughly examined that piece of evidence and each and every other piece of evidence admitted at trial that this court presided over, and also made those important credibility determinations that this court has talked about in case after case, including United States v. Dela Cruz, those important credibility determinations that this court does not second guess. Let me, what if we disagree and say, look, we think there's a conflict between what the officer said and what we're looking at with our own eyes? Is the video, the evidence in the video, enough to sustain the jury's verdict here, or is that enough evidence for the jury to reach its verdict? Even without, if I understand Your Honors, Let's go inside the officer and say, I don't believe, we're not going to consider him, we don't find him credible. Absolutely there's enough evidence to sustain the guilty verdict in this case, Your Honor. Like, going back to Judge Malloy's point a moment ago, it defies logic that this assault rifle, this long rifle, was anywhere else in the car. Based on the video, we saw it fall out from the car, with the door in the way, from where the driver was standing. It is undisputed that it was in the driver's seat, the appellant's seat. And it's also undisputed that the appellant was driving around with a loaded, ready-to-fire assault rifle. He also fled from the police at a high rate of speed at over 100 miles an hour with that assault rifle in the car. There's overwhelming evidence that the district court and the jury saw at trial that this appellant possessed that assault rifle, Your Honors. So that's why the argument was rejected by the jury. That's why it was repeatedly rejected by the district court. And that's why this court should reject it as well. And that's also why this court should affirm the conviction of the appellant. And it's also, Your Honors, this court should affirm the sentence of the appellant for the very same reason. In their briefing, the appellant has conceded, effectively, that their sentencing guideline objection completely fails if Your Honors accept the district court's fact-finding in this case. If Your Honors accept that the appellant came out of that car, even momentarily, holding that assault rifle, if that is accepted under their own argument that they made in their briefs, then the enhancement under 2K2.1 applies for possessing that firearm during a felony, Missouri felony resisting. And a separate enhancement under 3C1.2 also applies for the reckless endangerment during that high-speed chase flight. And I want to correct one thing, Your Honors. The sentencing transcript is actually abundantly clear. In Volume 2, specifically at page 54, the court made abundantly clear which enhancement applied to which and the fact that they are totally separate conduct. She says, and I'm quoting here, the four-point enhancement for possession of a firearm in connection with a felony offense is applicable for reasons that do not include the high-speed chase. That's a quote from the district court below. The high-speed chase was the two-point enhancement for reckless endangerment during flight, which obviously applies under this Court's jurisprudence, including this Court's decision in United States v. Williams. Now, separate conduct under 2K2.1 is when he got out of the car, when he had time to think about it. Eleven seconds elapsed between that car crash and the time he got out. He consciously got out of the car, picked up that assault rifle, knowing that he was about to be arrested. That is undoubtedly felony resisting. Let's say we disagree with the district court's finding on the arrest, and I know that's a high standard, but let's say we do. Can we still uphold the 2K enhancement? Yes, you can, Your Honor. We would urge you not to because the district court did not commit cleric, but yes, you can. In that scenario, Your Honor, the 2K2.1 would apply to the high-speed chase because he's riding around with an AR-15 and leading the officers on a chase that involved over 100 miles an hour. That's felony resisting under Missouri law because it, as Your Honor asked earlier, it involves a substantial risk of serious physical harm. That's the standard under Missouri law. So the 2K2.1 would apply there. And then the 3C1.2 enhancement for reckless endangerment during flight, that would apply from his flight from the car. He was recklessly endangering the officer from the car. So you just switch him around. Absolutely, Your Honor. And because the firearm is not necessary for the 3C1.2, Your Honor. So if you switch him around, that flight from the car, which ultimately ended up in a standoff between the appellant and the officer and ultimately ended up in the officer having to tase him, that is definitely 3C1.2 conduct. So either way, it does apply, Judge Kobus, but we urge Your Honors not to find clear error in this case because none occurred. I think it's important to note that in this case, it's sort of a unique situation. The district judge not only presided over the trial, but presided over the sentencing and the arresting officer testified at both. The district judge was in a unique opportunity to judge his credibility, to make those important credibility determinations that this court held were important under United States v. De La Cruz. That's exactly what the district judge did in this case. And the district court found that the appellant possessed that firearm. That is why the enhancements applied. That's why the guidelines were correct. And that's why this court should affirm the appellant's sentence. So for that reason, Your Honors, and for all the reasons mentioned today, yes. Let's assume that the defendant possessed the firearm. He had it next to him and that it just fell out, but he still possessed it. The evidence was supported. Would that support the 5K or the 2K enhancement? Absolutely. If he didn't actually take the gun out as part of the flight? And that goes back to Judge Kobus' question, because the 2K2.1 would then transfer to the flight and the high-speed chase. He is possessing that gun during the high-speed chase, Your Honor, and that is in connection with another felony offense. That's what's required under 2K2.1b6b. He's doing that in connection with Missouri felony resisting in that. And then 3C1.2, that two-level enhancement, would apply because he recklessly endangered the life of the police officer during his flight on foot, still separate conduct from the officer. Does that make sense? Well, yes, and actually I got it mixed up before, and that's why I thought I got it backwards in my mind earlier, and that's why I thought it was being done. I now understand I was wrong. But it does raise the issue of are we double counting here, which is sort of the appellant's main argument as well. If it's already considered under one section, you shouldn't add it under 3C. And if you're saying, well, the same conduct can support both enhancements, doesn't that give some credence to the appellant's argument that it's in essence double counting? It doesn't, Your Honor, and this Court has been clear in United States v. Bryant, United States v. Strong, that double counting only occurs when two separate enhancements are based solely on the same conduct that is capable of creating the same sort of harm. That's the standard that this Court uses, as cited in the briefing, for when double counting occurs. So when you look at these two distinct events, the harms are totally distinct. The high-speed chase is endangering the passenger, the members of the public on the road, the police officer from that high-speed chase. That is a distinct event, and it's broken by 11 seconds, as we saw in the video, from when he gets out of the car holding a loaded, ready-to-fire assault rifle as he knows the officer is about to make an arrest. That's a totally distinct event and a totally distinct harm. So there is no double counting. Even if you can transition the events, they're still separate, and they're still totally distinct harms, Your Honor. So that's why we respectfully request that this Court affirm. Thank you, Your Honor. I'll give you a minute, Mr. Selig. Oh, well, I appreciate that. Thank you, Judge. I just wanted to point out that there was no Missouri felony resisting. Under the Missouri felony resisting law 575.150, there is only a felony resisting if you're being arrested for a felony. Well, we have the testimony of Officer Grosch and Special Agent Lowery from Illinois, both of them saying that this was an investigative arrest. Didn't the district court find it was an arrest, or am I mistaken? I think that the district court made an error in looking at it. But the district court made the finding, or not? I don't think so. But it's not a felony arrest. Also, if it is a felony arrest, it's the same, you need that same recklessness, and that would be under 3C.1.2, as Judge Malloy says. It is certainly a lot of acrobatics and legal flipping around for these to be two, and there should be two separate acts when it is the same conduct. That applies to both. Well, your opposing counsel said that the high-speed chase was a felony, and you're saying it wasn't? Because he was clearly being arrested for this high-speed, 100-mile-an-hour chase through downtown St. Louis. Well, actually, the testimony of the witnesses don't say he was being arrested for a felony high-speed chase. He was being stopped for an investigation regarding something that happened two hours ago in Illinois. Well, I don't want to beat about the bush. He was going to be stopped for that. Yes. But then he takes off and leads the police on a high-speed chase through downtown St. Louis at speeds of over 100 miles an hour, which is obviously an extremely dangerous thing to do. You're saying that that high-speed chase wasn't a felony because he was clearly going to be arrested for that as well. Your Honor, there was no testimony about that. There's no evidence about that. Thank you. Thank you, counsel. Case has been thoroughly briefed and argument has been helpful. We will take it under advisement.  Yes, it does, Your Honor.